In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00172-CR

LEON CAULEY JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. 23DCCR0060

## MEMORANDUM OPINION

Appellant Leon Cauley Jr. ("Cauley") appeals his conviction for injury to a disabled person, a first-degree felony punishable by five to ninety-nine years or life imprisonment and a fine of up to $10,000. *See* Tex. Penal Code Ann. §§ 12.32, 22.04(a)(1), (e). In four issues, Cauley complains of the trial court's rulings admitting hearsay, evidence of an extraneous offense, and evidence of a criminal trespass warning prohibiting him from entering the home where the offense took

place. The State responds that Cauley failed to preserve error as to his evidentiary complaints, and that even if the trial court erred in admitting this evidence, its errors were harmless. Since the trial court did not reversibly err in admitting the challenged evidence, we affirm the trial court's judgment.

## BACKGROUND

In 2013, the complainant, "Wendy," sustained a gunshot wound. Due to this injury, Wendy has limited use of her upper extremities, cannot walk, and is confined to a bed or wheelchair.[1] Wendy's mother ("Mother") helps to care for Wendy, and as Mother was bathing Wendy, Mother discovered that Wendy had sustained burn injuries. Mother therefore called 911 for assistance. Wendy stated that Cauley had caused her injuries, and Cauley was charged accordingly. Cauley is Wendy's former boyfriend.

The indictment alleges that "on or about" December 14, 2022, Cauley "did then and there intentionally and knowingly cause serious bodily injury to [Wendy], a disabled individual, by pouring scalding hot water onto [Wendy]." The indictment

---

[1] We refer to the victim and the civilian witnesses or other alleged victims by pseudonyms or familial relationships to conceal their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). *See Smith v. State*, No. 09-17-00081-CR, 2018 Tex. App. LEXIS 1874, at *1 n.1 (Tex. App.—Beaumont Mar. 14, 2018, no pet.) (mem. op., not designated for publication).

also contains an enhancement paragraph alleging that Cauley was previously convicted of aggravated assault with a deadly weapon. The case was tried to a jury, which found Cauley guilty of the offense charged. The trial court sentenced Cauley to thirty years' imprisonment pursuant to the jury's verdict and Cauley filed this appeal. We summarize below the evidence pertinent to Cauley's appeal.

Mother's Testimony

On Saturday, December 17, Mother went to Wendy's house to take care of Wendy.[2] As Mother was getting ready to bathe Wendy, Mother saw that Wendy had "a very bad burn on her left side." Mother called the paramedics, who "suggested it was a third-degree burn[,]" and called the police. After Wendy told the police officers how she came to be burned, she was transported by ambulance to the hospital for treatment of third-degree burns.

According to Mother, even though some of Wendy's burned skin healed, Wendy has suffered long-term effects of her burns in that she has lasting scars to the burned areas.

Paramedic Rachel Clark's Testimony

Rachel Clark ("Clark") testified that she was a paramedic. Clark was called to Wendy's house on December 17 to address a burn injury. When Clark arrived, she saw that Wendy was lying in a hospital bed in her bedroom. The room also contained

---

[2] All dates are 2022 unless otherwise confirmed.

a wheelchair and a lift used to assist patients who cannot get up without assistance. As Clark assessed Wendy's condition, Clark observed third-degree burns on Wendy's left leg, buttocks, and genital region. In response to Clark's questions about the burns, Wendy told Clark that on the previous Wednesday, Cauley had burned her with "scalding water[,]" and "that she was in severe pain[.]" Clark recited a complete answer as follows:

> [H]er ex-boyfriend had broke into the house and had taken her cell phone away, broke the TV, and he had taken scalding water and dipped a towel into it. He then took the towel and [w]rung it over [the] top of her and then used the towel to rub the scalding water around on her.

According to Clark, "[t]hird-degree burns are very unlikely to heal on their own[,]" and if a third-degree burn is not treated, it can become infected, potentially leading to septic shock and death. Third-degree burns may also "cause permanent scarring, which could involve some nerve-endings."

Officer Andrew Collins' Testimony

Andrew Collins ("Collins") testified that he worked in the Patrol Division of the Beaumont Police Department. After describing his training and qualifications, Collins explained that he was dispatched to Wendy's home on December 17, where he spoke with Mother, Wendy, and EMS personnel.

Collins defined "deadly weapon[]" as including scalding water because it is able to cause serious bodily injury or death.

<u>"Wendy's" Testimony</u>

Wendy testified that her 2013 gunshot wound left her with incomplete quadriplegia, which Wendy understood to mean that she is immobile, but that her condition "can be reversed with the right therapy." Wendy testified that although her mobility has improved over the years, and she could cook, clean, and use her cell phone, she could not walk or care for herself on her own. Due to her 2013 injury, Wendy requires "round-the-clock care . . . seven days a week[]" and wears incontinence protection. In addition, the paralysis caused by Wendy's 2013 injury renders her unable to defend herself or to provide her own food and shelter.

Wendy recalled that she and Cauley had a dating relationship from about August to December, when Cauley burned her. Wendy denied having invited Cauley to her home on Wednesday, December 14. Cauley, however, came to Wendy's home on that date and "kicked a 55-inch TV, . . . broke [a] laptop and stole medications . . . and a camera[.]" Wendy also testified that Cauley broke her cell phone, and barricaded the door of her bedroom with her wheelchair, so that nobody could enter the room.

During that day, Wendy needed to clean herself, and since Cauley had excluded everyone but himself from the room, Wendy needed Cauley's help in doing so. Wendy testified that Cauley told her to stay in bed while he obtained a basin of water. When Cauley returned with the water, Wendy saw steam rising from the water

5

and thus knew that the water was too hot. Wendy told Cauley that the water was too hot, and Cauley returned to the bathroom. When Cauley again came into Wendy's bedroom with water, Wendy noticed that the water was still steaming hot. Wendy described Cauley's next actions:

> He actually grabbed the towel and squeezed the towel on me, and that's when I jumped and I told him it was hot. Because I can feel a lot of my body. And before I could even turn back over on my back, that's when he proceeded to pour a big basin of hot water on me.

Wendy stated that the hot water was painful and that she screamed that the water was hot and burning her. Cauley told Wendy, "Shut up, bitch," and "shut the [expletive] up." Although Wendy cried and repeatedly told Cauley that he was hurting her, Cauley laughed and wiped her "hard" with the towel and called Wendy a "big baby."

When Wendy's home care attendants came to the house on Thursday morning, Cauley answered the door and told them that he would take care of Wendy, so the attendants' services were not needed. After Cauley left late Thursday morning, Wendy's attendants saw her but did not provide medical care.

When Mother came to take care of Wendy on Saturday, Mother saw Wendy's injuries and immediately called 911. Wendy confirmed Mother's testimony about the paramedics, the police, and treatment at St. Elizabeth Hospital. Wendy testified that hospital personnel characterized her injuries as "third and fourth-degree burns."

6

While at the hospital, Wendy related the same history of injury that she had told Mother, the paramedics, and the police: that Cauley had burned her with scalding water. Wendy testified that Cauley did not trip and accidentally pour the water on her nor did anyone force Cauley to pour the water on her. When asked whether her injuries had healed, Wendy explained that she still bore the scars from the burns on her left leg from her buttock to her knee. Wendy also noted that her fourth-degree burns "doesn't completely heal. Like, it will heal so much and then it will reopen and then close to a certain extent and then reopen." Wendy acknowledged a preexisting injury on her right side, stating that she "was hospitalized, septic with the whole – basically you can see all the way to my bone on my right side from a nursing home[.]"

Leon Cauley Jr.'s Testimony

Cauley testified that he receives disability income for what he called "schizofitzo" disorder. According to Cauley, he met Wendy through social media. Cauley recalled that before coming to Beaumont, he was in Jacksonville, where he "was getting cut on by a female[,]" so he stayed with his brother in Hillsboro for a time. Cauley also testified that in about October, he took a bus from Dallas to Houston and Wendy paid his Uber fare from Houston to her home in Beaumont.

Cauley recalled that on or near Thanksgiving, he was at Wendy's home. When Wendy and Cauley had an altercation, Mother called the police, who responded and

told Cauley that Wendy wanted him "to leave and get some fresh air." The officers also took Cauley to jail due to an outstanding warrant from Jacksonville, in Cherokee County. After being in jail in Jacksonville "a couple days[,]" Cauley posted bond, and obtained a ride back to Beaumont "about a week and a half" later. He arrived at Wendy's home in mid-December.

According to Cauley, Wendy told him it had "been hard on her since [Cauley] left" and she was "ready for [Cauley] to come back because they ain't been treating [her] properly." Cauley averred that Wendy invited him to return to her home and that Cauley, therefore, had not violated the criminal trespass warning.

Cauley denied having intentionally, knowingly, or recklessly poured scalding water on Wendy, but acknowledged that he may have accidentally spilled hot water aggravating Wendy's preexisting scars. Instead, Cauley stated that he obtained "normal temperature" water from the bathtub. Cauley claimed that the water was not steaming, that Wendy did not complain that the water was too hot, and that he believed "the water probably irritated the burn." Cauley then stated that he stopped bathing Wendy when she complained that the water was too hot. Cauley further denied telling Wendy to "shut the [expletive] up, bitch[,]" and did not know whether he called her a "crying baby[.]" In addition, Cauley testified that he did not barricade the door with Wendy's wheelchair and that "[t]he only time I kept the door like that when we was intimate with each other. That's the only time. . . . Because the door

8

don't have a lock on it." Cauley stated that he did not know why Wendy would make the accusations she made against him.

When asked about past and current criminal complaints, Cauley acknowledged having "very trouble with women[,]" but denied that he assaulted his former wife, "Tanya," even though he pleaded guilty to the charge and was sentenced to three years in prison. Cauley also denied that he was charged with assaulting "Vivian" in Jacksonville, and that his warrant out of Jacksonville was related to a case involving Vivian. Cauley later acknowledged the accusation. Cauley admitted that his Dallas court case arose out of an allegation that he had assaulted "Faith." The parties and the trial court discussed Cauley's difficulties in Jacksonville as follows:

> [THE STATE]: You also talked about getting cut by a female in Jacksonville. You also talked about a warrant out of Jacksonville.
>
> Would that be related to the case involving [Vivian]?
>
> [CAULEY]: No.
>
> [THE STATE]: [Vivian] did not accuse you of assaulting her in –
>
> [DEFENSE COUNSEL]: Objection, improper impeachment.
>
> [THE STATE]: Judge, he opened the door when he talked about the warrant and this female in Jacksonville –
>
> [CAULEY]: That wasn't what the warrant was –
>
> [THE COURT]: Hold on. Hold on. Don't – hold on.
> Overruled. You can ask a question.

9

[THE STATE]: [Vivian], where does she live?

[CAULEY]: Jacksonville.

[THE STATE]: Jacksonville.
[Vivian], she's accused you of assaulting her, correct?

[CAULEY]: Well, when I was –

[THE STATE]: "Yes" or "no"?

[CAULEY]: – cut on, it was – it was another woman.

[THE STATE]: Objection, nonresponsive.

[CAULEY]: It wasn't [Vivian].

[THE COURT]: That's fine, but make sure – he asked you a specific question about this person, so answer that question, and then he can ask you follow-ups about other things if he needs to.

[CAULEY]: No. Because that wasn't – when I was getting cut on –

[THE STATE]: Objection.

[THE COURT]: Hold on.

[THE STATE]: Mr. Cauley, I'm going to ask the questions here. I'm not going to just let you talk. Do you understand that?

[CAULEY]: Mm-mm.

[THE STATE]: So, is there not a criminal case charging you with assaulting [Vivian] pending in Jacksonville?

[CAULEY]: Yes.

. . .

[THE STATE]: Your Honor, the State at this time would offer State's Exhibit No. 9, a certified copy of a document from the Cherokee County Clerk's Office. And for purpose of the record, I'm tendering to defense counsel for inspection.

[DEFENSE COUNSEL]: Your Honor, I will renew my objection of improper impeachment and object to the astringent evidence.

. . .

[THE COURT]: Improper impeachment why?

[DEFENSE COUNSEL]: Well, Judge, he's only allowed to impeach him with convictions that are under 609 that are felony convictions that are less than ten years.

[THE STATE]: I think I can – sorry. Go ahead.

[DEFENSE COUNSEL]: No. That's the probations –

[THE STATE]: Well, Judge, it is not a conviction. He's essentially lied about that case pending and it also goes to his credibility. It is not a conviction. I can see that, but he lied about being –

[CAULEY]: I didn't lie about anything –

[THE COURT]: Hold on. This – this conversation doesn't include you.

[THE STATE]: He lied about being charged with assault involving [Vivian]. It goes towards his credibility.

[THE COURT]: Overruled. State's 9's admitted.

When the State summarized the evidence, asking "Four ladies have accused you of assault, correct?" Cauley responded, "Could have been ten." When the State next asked Cauley to confirm that he was a convicted felon, Cauley replied, "I don't know. I gotta look into it."

11

The Criminal Trespass Warning

On November 23, the Beaumont Police Department issued Cauley a criminal trespass warning. The warning was admitted over Cauley's objection and reflects Wendy as the complainant and gives the reason as "disturbance." The warning also identifies Cauley as the person warned, stating, "**WHO IS HEREBY NOTIFIED THAT IF HE/SHE ENTERS, WITHOUT EFFECT WRITTEN CONSENT** [Wendy's address] **THEY WILL BE ARRESTED AND CHARGED WITH CRIMINAL TRESPASS**." Wendy signed the warning as the complainant.

Cauley's Criminal Records

State's Exhibit 9, admitted over Cauley's objection, contains a complaint against Cauley for assaulting Vivian in Jacksonville on or about November 10, 2021. When Cauley failed to appear, the court issued a warrant for his arrest. The warrant reflects that Cauley was taken from Jefferson County to Cherokee County on December 7.

State's Exhibit 10 reflects that Cauley was convicted of a second-degree felony in the assault of Tanya, in that he cut Tanya using a box cutter during the assault. This exhibit was admitted without objection.

**ANALYSIS**

On appeal, Cauley argues that the trial court reversibly erred by admitting (1) a paramedic's hearsay testimony; (2) State's Exhibit 9 (the pending assault

complaint and arrest warrant from Cherokee County); (3) evidence of the pending assault charge from Cherokee County; and (4) State's Exhibit 11 (the criminal trespass warning).

We review complaints about the admission of evidence under an abuse-of-discretion standard. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We will not reverse a trial court's ruling on the admissibility of evidence unless it falls outside the zone of reasonable disagreement. *See Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016).

Even if the trial court should have excluded the challenged evidence, we will not sustain Cauley's appellate issues unless he preserved error at trial by making a timely request, objection, or motion. *See* Tex. R. App. P. 33.1(a). Moreover, if similar evidence is admitted without objection, error is not preserved, and the objection at the trial court level must comport with the complaint on appeal. *See Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023); *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (citations omitted).

Issue One: The Paramedic's Hearsay Testimony

Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement. *See* Tex. R. Evid. 801(d). Hearsay is not admissible except as provided by statute, the rules of evidence, or by other rules prescribed under statutory authority. *Id*. 802. Once the opponent of hearsay evidence

makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible despite its hearsay character. *See Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). There are several exceptions to the hearsay rule, including an exception for "[a] statement that: (A) is made for -- and is reasonably pertinent to -- medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). This exception presumes that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis or treatment. *See Puderbaugh v. State*, 31 S.W.3d 683, 685 (Tex. App.—Beaumont 2000, pet. ref'd); For statements to be admissible under Rule 803(4), the proponent of the evidence must show that: (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement; and (2) the particular statement offered is also "pertinent to treatment;" that is, it was reasonable for the healthcare provider to rely on the particular information in treating the declarant. *See Taylor*, 268 S.W.3d at 589-90; *Hanke v. State*, No. 09-14-00326-CR, 2015 Tex. App. LEXIS 9884, at *18 (Tex. App.—Beaumont Sept. 23, 2015, no pet.) (mem. op., not designated for publication) (citing *Taylor*, 268 S.W.3d at 588-91).

Clark's hearsay testimony includes both Wendy's identification of Cauley as her assailant and Wendy's statement that Cauley broke into Wendy's home and broke her cell phone and television and stole some of Wendy's property. When Clark testified, she recalled that she asked Wendy questions, and Wendy responded that "her ex-boyfriend" burned her with scalding water. Cauley objected that the State's question elicited hearsay, and the State responded that "it's for purposes of providing medical treatment[.]" The trial court overruled Cauley's objection. Clark's testimony that Wendy said her ex-boyfriend burned her with scalding water falls within the medical treatment exception to the general rule excluding hearsay, since it explains how Wendy came to be injured, and thus was "made for -- and is reasonably pertinent to -- [Wendy's] medical diagnosis or treatment[]" and described the inception and cause of Wendy's injury. *See* Tex. R. Evid. 803(4).

Wendy was an adult and therefore was aware that her statements to Clark and other paramedics were made for the purposes of medical diagnosis and treatment and that proper diagnosis or treatment would depend on the veracity of her statement. Wendy's statement that she had been burned with scalding water was pertinent to treatment, since it was reasonable for the paramedics to rely on this information in treating Wendy's injury. Clark's testimony about Wendy's statement thus satisfies the cited exception to the general rule requiring exclusion of hearsay testimony.

15

Although Clark's testimony repeating Wendy's statement that Cauley broke into the house, broke Wendy's cell phone and television, and stole medications and a camera, falls beyond the scope of a statement made for the purpose of medical treatment, Cauley did not object on this basis at trial. Cauley therefore has not preserved error as to the portion of Clark's testimony that is not protected by a hearsay exception. *See* Tex. R. App. P. 33.1(a).

In addition, during Wendy's own testimony, Wendy described not only how Cauley injured her, but also testified that Cauley broke her cell phone and television and stole medications and a camera. Wendy's testimony duplicates Clark's hearsay testimony. Since it is not reversible error for a trial court to either admit or exclude cumulative evidence, the trial court did not reversibly err by admitting Clark's testimony regardless of its hearsay status. *See Coble v. State*, 330 S.W.3d at 282 ("[e]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling'").

Since the trial court did not abuse its discretion in admitting this evidence, we overrule Cauley's initial issue.

Issues Two and Three: Hearsay and Extraneous Offense Evidence

Cauley's second and third issues posit that the trial court erred in admitting State's Exhibit 9, evidence of a misdemeanor assault complaint then pending in

Cherokee County. Cauley contends that this evidence was both hearsay and evidence of an extraneous offense and therefore was inadmissible. Although Cauley correctly argues that this exhibit is both hearsay and evidence of an extraneous offense, the trial court did not reversibly err by admitting it, since this exhibit is cumulative of Cauley's testimony.

As discussed above, hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement. Tex. R. Evid. 801(d). Here the truth of the matter asserted by the challenged evidence is that Cauley was charged with assaulting and injuring Vivian in Cherokee County on or about November 10, 2021. Since the State offered its Exhibit 9 to show that Cauley was charged with this assault, the exhibit was hearsay, and thus inadmissible unless it fell within an exception to the hearsay rule. *See id*. 802.

As evidence of an extraneous offense, this exhibit was inadmissible under Rule 404(b)(1) unless it was shown to be admissible for another purpose under Rule 404(b)(2). *Id*. 404(b)(1). Rule 404(b)(2) permits evidence of extraneous offenses if such evidence is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. 404(b)(2); *see Martin v. State*, 173 S.W.3d 463, 465-68 (Tex. Crim. App. 2005).

When the State offered its Exhibit 9, Cauley objected to "improper impeachment and . . . astringent evidence." Cauley contended that he could be

impeached only "with convictions that are under 609 that are felony convictions that are less than ten years." The State responded that the exhibit was admissible because Cauley "lied about being charged with assault involving [Vivian]. It goes towards his credibility." The trial court overruled Cauley's objection and admitted the exhibit.

When the State asked Cauley, "You also talked about getting cut by a female in Jacksonville. You also talked about a warrant out of Jacksonville. Would that be related to the case involving [Vivian]?" Cauley said, "No." The State understood Cauley as denying that he was accused of assaulting Vivian, so it was not improper impeachment to offer evidence to refute Cauley's denial. *See* Tex. R. Evid. 404(b)(2); *Reyes v. State*, 741 S.W.2d 414, 421 (Tex. Crim. App. 1987) ("It is well established that when a defendant in a criminal case voluntarily takes the witness stand in a trial on the merits on his behalf he occupies the same position and is subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness, except where there are overriding constitutional or statutory provisions.") (citations omitted).

In addition, Cauley has not preserved error as to this exhibit, since his objections at the trial court consisted of "improper impeachment," and "astringent

18

evidence."[3] On appeal, Cauley argues that State's Exhibit 9 was "hearsay and related to an extraneous inadmissible offense." Since Cauley did not object to this exhibit as hearsay in the trial court, he may not do so now. *See* Tex. R. App. P. 33.1(a); *Compton*, 666 S.W.3d at 714.

As for Cauley's "astringent evidence" objection, since Cauley referenced Rule 609 and impeachment through evidence of a felony, we believe the trial court understood the basis of Cauley's objection. *See* Tex. R. Evid. 609. We agree, as did the State, that State's Exhibit 9 is not evidence of a felony conviction within ten years. The State, however, offered this evidence to show that Cauley's testimony was incorrect, and that Cauley was charged with assaulting Vivian, just as Cauley had been charged with assaulting Faith and Tanya. Once some confusion was resolved, Cauley admitted the assault charge against Vivian. Accordingly, State's Exhibit 9 duplicates Cauley's admission about this charge, and the trial court did not reversibly err by admitting it. *See Coble*, 330 S.W.3d at 282.

We overrule Cauley's second and third issues, as the trial court did not abuse its discretion in admitting the challenged evidence.

Issue Four: The Criminal Trespass Warning

In his final issue, Cauley argues that the trial court erred by admitting the criminal trespass warning, State's Exhibit 11, for impeachment purposes. Cauley

---

[3] Cauley posits that "defense counsel probably meant 'extrinsic.'"

contends that this evidence "was not proper impeachment in any manner[]" because "[p]roper impeachment does not include the introduction of unrelated bad acts that only serve to show the accused is a 'bad actor.'" Cauley relies on Rule 404, which states, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). Cauley has not, however, shown that the State offered this exhibit for the improper purpose Cauley contends on appeal. Instead, it appears that the State offered this exhibit to attack Cauley's credibility, a permissible subject of impeachment. *See id*. 607.

Here, the police issued Cauley a criminal trespass warning on November 23. This warning states, in bold print, that written consent is required for Cauley to reenter Wendy's home, yet Cauley testified that on November 23, the police did not "put[] [him] out[,]" but told Cauley that Wendy wanted him "to leave and get some fresh air." Cauley also testified that he did not violate the criminal trespass warning by going to Wendy's home in December, since, according to Cauley, Wendy allowed him to return. The record contains no evidence that Cauley had Wendy's written consent to visit her home. Therefore, the state's evidence about the criminal trespass warning was relevant to show Cauley's lack of credibility and was admissible under Rule 402, which states that relevant evidence is generally admissible. *Id*. 402, 611(b); *see also Martinez v. State*, 17 S.W.3d 677, 688 (Tex.

Crim. App. 2000) (holding that witness credibility is relevant). Additionally, since Cauley did not object on the basis that this evidence bearing on his credibility should have been excluded because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence[,]" he has not preserved that argument as to State's Exhibit 11. *See* Tex. R. Evid. 403; Tex. R. App. P. 33.1(a).

The trial court did not abuse its discretion in admitting this evidence. We overrule Cauley's fourth appellate issue.

## CONCLUSION

Having overruled all of Cauley's appellate issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on January 2, 2026
Opinion Delivered April 1, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

21